Good morning, Your Honors. Carl Gunn, appearing for Mr. Brohn. With the Court's permission, I'm going to try to save two minutes for rebuttal. I will try to keep track of my time. As Your Honors know, this is a case about erroneous supervised release conditions. First, there was a condition, the drug testing condition, that wasn't justified on this record. That issue is sort of a case-specific one. Second, there were overly broad sex offender and computer conditions, and those are errors that I think this Court has seen before, where I think probation officers are sort of still getting used to what's allowed and what isn't allowed. I'll start with the case-specific drug testing condition, unless the Court prefers me to go to another place. On that one, there were, I think I described three layers of error in the Court imposing it. First, there was a problem, there was a prior finding at the original sentencing that there was no risk of substance abuse. And that does two things. First, to the extent that there's a burden on the defendant under 3583D to produce evidence that there's no risk, to overcome the sort of presumption that creates, that shows the burden was carried. Second, I think that carries weight under the law of the case doctrine. I mean, that's basically the law of the case, that at least at that point in time, there was reliable evidence showing no risk of substance abuse. Well, counsel, how can law of the case apply to supervised release conditions when the very purpose of imposing the conditions is to take account of the circumstances that exist when the offender is before the court? At the later point in time. At the later point in time. Well, law of the case does take that into account, because law of the case says you can change a ruling based on changed circumstances. The problem here, that sort of gets to the second layer of error here, Your Honor, is there weren't any ---- Well, before we leave that point, do you have a case that says that law of the case applies in the context of applying supervised release conditions when an offender is before the court for violation of those conditions or subsequent circumstances? Do you have a case that says that? No. I'm extrapolating from the general case law in law of the case, Your Honor. But I think that establishes the law of the case that at the time of the original sentencing, there was no risk of substance abuse. Now, the issue at the time of a revocation in new sentencing, of course, is whether there's a risk at that time. And I think that fits very nicely with the law of the case principle that you can look at changed circumstances. So were there changed circumstances here? That gets to the second layer of error. There was absolutely nothing at the time of the new sentencing or the revocation to suggest a risk of drug abuse. I thought that there was some evidence or there was something in the probation officer's report that he had been on medication. Well, he was taking prescription medication. I guess my point is ---- He'd been taking meds, prescription meds. I don't know what for whatever. Right. Could have been blood pressure medication. He had just been, his supervisory release had been revoked because he had engaged in theft. Theft. Pretty significant. And the judge is trying to fashion, based on the probation officer's report and recommendation, is trying to impose conditions that he believes are warranted under the circumstances. I don't see why he's stuck with the law of the case. Well, I think there has to be something suggesting there's a risk of drug abuse. I don't think taking prescription medication, unless we're talking about, say, something like OxyContin, where, of course, there's all the publicity about potential drug abuse spinning out of that. But the vast majority of prescription medications, there's no reason to think that's going to lead to drug abuse. And so that's not enough. The mere fact of committing some non-drug, non-violent type of crime, like embezzlement, is not enough. There's absolutely nothing in any word to suggest that Mr. Brone posed a risk of substance abuse. There's also a third layer of error here, and that is, did the court have any reason — your honor, I'm sorry. Was there any evidence as to whether or not the blood pressure medication could be abused? Let me step back. First of all, there was actually no evidence. It was blood pressure medication. Oh, I thought that's what you said. I was — that was a possibility. Oh, okay. Well, do we know what the medication was? No evidence about what the medication was. Well, shouldn't that have been developed if you wanted to rely upon it? I think it had to be developed by the probation officer if the probation officer wanted to rely on it as changed circumstances. You know, if you have the original finding that there's no risk of substance abuse, the record suggesting there's a reason to find a risk of drug abuse. But what case says there has to be some evidence of drug use in the record in order to oppose a drug condition? I thought our case in Jeremiah said exactly the opposite. Well, Jeremiah is a plain-error case, so all Jeremiah says is it wasn't plain-error to impose the condition there. But in Jeremiah, they started the first step, and they said there was no error. I'm sorry. Say that again, Your Honor. Even though it was a plain-error case, they decided it at the first step, saying there was no error. They actually didn't, Your Honor. There's a footnote in Jeremiah that says we assume for purposes of argument that ordering the testing was the eight tests a month was too much, but it didn't affect the sample size. But that's the number of tests, not the actual imposition of the drug testing requirement. Well, I think the whole thing was analyzed on a plain-error basis. I don't think Jeremiah found there was no error at all. I think Jeremiah simply found there was no plain error. Now, Jackson, the problem with Jackson, which did analyze, was it was addressing really a different issue about whether the new statute violated an ex post facto prohibition. In Jackson, at the very least, the tests that were ordered were the minimum, one test within 15 days and two tests thereafter. There's an additional problem here of the court going even farther than the minimum that's required by 3583D, presumptively, by ordering the up to four tests a month. And that's what Jeremiah assumed, except it was eight. Well, Jeremiah says we hold there was no error, not plain error. We hold that there was no error committed by the district court. And it says, although there is no evidence of drug use by Jeremiah, he has not deprivation of his liberty. Can Your Honor point me to the page you're reading from so I can respond? Absolutely. I'm reading from 1047, 493F3rd, 1047. Toward the end of the final paragraph of the decision. On appeal, Jeremiah, beginning with on appeal, Jeremiah bears the burden of? Yep. That second sentence. Although there is no evidence of drug use by Jeremiah, he has not established that the drug testing requirement is unjustified deprivation of his liberty? Right. Well, I don't know. It doesn't say the standards, specifically the standard is applying there, but it does say go down to paragraph E. Because we hold there was no error, it doesn't say plain error, there is no error committed by the district court. Your Honor, I think the court is, it begins its analysis by saying it's applying a plain error standard, and on that same page, there's footnote 3 that says assuming without concluding that it was error to order. That's the number. All right. Well, then I should get relief here on the number, if not the basic condition. Well, okay. So are you ceding the point that our case authority does not prohibit the court from imposing these? Well, I won't cede it. I will step to my backup argument if Your Honor won't cede it to me. And of course, Your Honor has the power, not me. I was going to address the computer conditions a little bit, but I see I'm getting short on time. Well, the government made some concessions regarding the computer conditions, correct? They did make some concessions, yes. So in terms of use of computer with access to the internet, the government agreed that it should be limited to devices capable of accessing the internet. Would that be amenable? Would you be amenable to that? No, because if you can't have a device capable of assessing the internet, there's two problems with that. First, that goes to my third argument about whether they can prohibit internet use. Second, if you're talking about the monitoring, you have to not only limit it to internet activity, which is a little... That's what we've done in other cases. Right. You did it in Keynes Zone. I think Keynes Zone is the only case, but you did it... We just read the probation order to limit it. Right. In our disposition, this is limited to internet activity, the monitoring. The problem with that is twofold. First of all, in Keynes Zone, there was a specific reference to internet activity in another sentence in the same condition, which there isn't here. The second problem I'd suggest to the court is especially when you're talking about what kind of monitoring possibilities are out there and that kind of thing. I think, frankly, it's a better use of resources for the district court and the probation officer and the attorneys to be in court to hash out those details than it is to have to try to have this court do it without having... Well, you're concerned about those that he might be subject to some sort of revocation or some sort of punishment or whatever for violating the terms of the probation order. In our disposition, if we make it clear that that condition is limited to internet activity, what's the problem? I don't understand. If the probation officer puts some sort of monitoring on there that he and or his attorney doesn't think should be on there, then first of all, he's got to decide whether to take on his probation officer in court, which some defendants are going to be a little loath to do and nervous about. A defendant can... And I remember this from just my district court days. Defendants can come back to the district court and ask them to modify any term and condition of supervised release. Your Honor, you are a nice... It happened many times. You are a nice district judge dealing with nice probation officers. Some of them are different. Some of them are also nice, but some defendants are going to be apprehensive about that. And the problem is you're also sitting there with that monitoring software or no one month or two months or however long it is before you get back into court. So frankly, I think it makes more sense for the district court to hash that out, especially if you're sending it back... My impression after seeing several of these cases is that the probation officers throughout the circuit are sort of beginning to modify the language and to come into compliance with what we've said in our case law. And it's not going to happen overnight, but they do meet, they do get together, they do discuss our cases and they make appropriate adjustments. The problem is your honors are up here sort of setting a condition or trying to articulate a limit without probation officers and attorneys who've gone out there and researched everything that's available and are presenting that to a judge saying, here are the options, judge, here's how it could work and that kind of thing. So you're not operating with the same sort of breadth of information that can be presented back in the district court. Well, hopefully we have it in the record. I mean, we're privy to what is presented to the district court judges, and the district court judges are bound to follow our strictures. So why is that a problem? Well, it never got presented in this record because the judge just said no. And of course, it was back to the original sentencing that the objection was made. The judge just says, no, I'm not going to change the condition. So there was never any discussion about what types of monitoring were available, et cetera, et cetera. Okay. Thank you, Mr. Gunn. We'll, I'll give you a minute, don't worry about it. Thank you. Good morning, Your Honors. David Gappa for the United States. May it please the Court. There was a sufficient nexus between Brown's two federal convictions for sexual offenses against minors and the sentencing objectives of deterrence, protection of the public, and rehabilitation of Brown for the district court to impose all of the conditions to which Brown did not object prior to sentencing. Brown has not met the plain error standard for four of the conditions that he has challenged on appeal, nor has he demonstrated that the district court abused its discretion by not waiving the mandatory drug testing condition, and this is especially true considering Brown's prior history that includes a conviction related to possessing child pornography on a work computer in New Jersey, and being connected to a personal computer in Arizona that contained child pornography. In hearing the court's questions, it is obvious that the court has read the briefs and has focused on the issues, and it is true that the statute mandates drug testing. The defendant has approached this issue as though it were a discretionary call, and that it was an abuse of discretion by the district court. In fact, it is mandatory, and then the statute provides that drug testing may be either ameliorated or waived if there's a basis for that. Here, the probation officer had a concern that the defendant was taking medication. The record is not as well developed as it might be because this objection was not raised until after the condition was imposed. Well, when that was raised during your opponent's argument, he said that was your obligation to do, to present evidence about the medication. Well. Whose obligation was it to more fully develop the record that you say is not fully developed? The defendant was on notice that this condition was proposed. The probation office had suggested it to the court. There was no objection prior to it. Had there been an objection prior to sentencing, the record could have been more fully developed. As it was, it was left to the district court to then respond to the concern and ask the probation office for its input. So. So you're saying it could have been your obligation or your burden had he objected to it? Well, I think the colloquy that came up was in the context of changed circumstances. So it's true in the case law that if there is a question of changed circumstances, then potentially that does shift something to the probation office and to the government. But in this situation, at the time when the condition was being proposed and imposed, the burden would have been on the defendant to raise the objection prior to sentencing. And at that point, the district court could have developed the record further. So we don't have answers to some of the questions of what were the medications, what was the amount, exactly. So, you know, the way this, I don't know, where did, what district was this from? Eastern District of California. So usually the procedure is, is that when the probation officer issues his, the recommendation, lists the conditions that he's recommending, the usual procedure is that there's a written objection, there are written objections if there, if there's, if the defendant is going to object. Did that, did that take place here? No. There were not. There was not a written objection to the drug test. Not to this condition. So this was a rev, in this instance, there was a complete revocation of supervised release, right? Correct. What's the significance of that? In terms of? I mean, so is this, is this like a new, sort of like a new, new procedure, I mean, there's a new judgment that was issued, it's called the judgment in a criminal case. And it says that the court revokes, and then it goes through and provides for imprisonment, mandatory conditions, which is the drug, this is where we find the drug testing. Correct. Right? Correct. So it's like if it's a new proceeding, the district judge was starting out with the notion that he had to impose a drug condition unless he determined that there was no reason to. Correct. Right? And we disagree for the reasons in the brief that the law of the case doctrine applies here. First of all, there was no law, no legal principle that the district court initially decided, and that was a fact-specific decision and an exercise of discretion by the district court judge in 2010 based on the factual record before it. And there were changed circumstances. In the intervening period of nine years, there was a new district court judge, a new probation officer, and the defendant had committed theft for at least the course of a year, stealing $10,000 to $50,000 from his employer. And that relationship between the supervising officer who had been monitoring Brown for the time he'd been on supervision for approximately two years, that trust was undermined by the acknowledgement by Brown that he had been stealing all the while that he had been representing that he was in compliance by obeying all laws and not committing another state or local offense. So it was the probation office that had the concern and wanted the authority to test Brown. And as the court has noted, this is not a situation where he's been subjected to a number of tests and that's, you know, in his opinion, excessive. This is simply giving the probation officer the statutory authority that is presumptively mandated. So it was not an abuse of discretion. The frequency was, could be a maximum of twice a month? The district court allowed probation to test up to four times per month. Four times per month. Correct. What do you say about the excessiveness? That is not excessive in the government's view. This court has found that up to eight times per month of random testing is not error. And so this is half of that amount. And in cases such as that, has there been a history of abuse? In the case where there was up to eight times per month? Yes. I don't know that there was necessarily a history of abuse, but I think putting this in the context of the drug testing condition, this court has held that even to impose the condition, there does not necessarily have to be a documented history of substance abuse. I understand, but we're going on to the next level, the frequency. Correct. As the court has noted in argument today, if the defendant believes that it becomes excessive, then he has the opportunity to go back to the district court and challenge the number. But in our view, the number of four times per month is not excessive. That's not an abuse of discretion. It's simply authority vested in the probation office. If there is a reasonable suspicion and a concern that he's abusing drugs or using illicit drugs. Could you address the other conditions, the special conditions of supervised release? Yes. Those are obviously reviewed under plain error because there was no objection. And in our view, the plain error test has not been met. There was discussion about the monitoring. On any of these, the plain error test has not been met? Correct. All right. Because we believe that there is a sufficient nexus between his crimes and the use of a computer, for instance, to justify the imposition of the search condition for devices that are connected to the Internet, the same for monitoring. Now, the court has noted that if there were any concern on that issue, the government has suggested that this court might, because we are in the context of plain error and we're looking at the potential fairness and integrity of the judicial process, as well as, to a certain extent, conservation of resources, this court, to the extent that there would be a concern on the monitoring condition, could limit the monitoring condition to devices connected to the Internet. That's exactly what this court did in Quinzon. Similarly, this court took that action in Goddard to limit it. This defendant is not shy. He's not afraid to step up and challenge directly and or through the attorneys that have represented him any of the conditions. The court can look at the district court record from the first sentencing. He had numerous concerns. There was a plea agreement. He violated that plea agreement by filing a habeas petition on his own. And then — What about number 10 on the possession of any materials, including written materials, depicting sexually explicit child conduct? Isn't that a problem under our case of Cope? Well, Cope was prior to this Court's decision in Nerkey, and Nerkey is the more recent decision which addressed that. The language in Nerkey that was challenged was potentially subject to a broader interpretation. The panel in Nerkey decided that the more appropriate reading would be not to read into it an overbroad interpretation, that it should be limited to the condition to be read so that it was no greater restriction on his liberty than reasonably necessary. So the language was proposed in the decision in Nerkey, and this language in this condition that this probation office proposed and the district court imposed tracks almost verbatim the language that was suggested by the panel in Nerkey. So as Judge Paius has noted, the probation office does take note of the developments in the law, tries to implement those, and in this situation did exactly that. So we don't believe that it is a problem. And to the extent that it is, as the Tenth Circuit did in the Mike case and the Fifth Circuit in Brigham, the more common sense reading would be to read the provision narrowly. So my time is up, unless the Court has any other questions. Roberts. Thank you, Your Honor. Mr. Gunn, you can have a minute. If the Court's not going to follow up. I don't think Nerkey, what Nerkey focused on is the definition of sexually explicit and how you couldn't use the child porn definition for adult materials. It didn't focus on the problem of including writings such as you needed for your case or such as you needed for the treatment. Nerkey, I don't believe, addressed that at all. Nerkey was talking about the sexually explicit material definition you put on top of whatever the defendant couldn't have. So Nerkey's dealing with a different part of that issue and not the part that we're complaining about here. So you're suggesting if you get over the plain air impediments, that it does require a remand for that to be revised? Right. And just interpreting it around the problem is not sufficient? I think so. And on all these things, I frankly think it makes more sense to send it back to the District Court so the District Court can have some back and forth with the attorneys and the probation officer about what the possibilities are and sort of hash those out. I think that's more effective than this Court going back in chambers and judging what the best law is. I did want to make one other point about the drug testing. If the Court's not inclined to go with me on the general no drug testing at all, really all the government has to hang its hat on here is what I call the presumptive nature of 3583D. But all that's presumptive under 3583D is one drug test within 15 days and two thereafter. So at the very least, requiring this up to four drug tests a month goes too far when there's no evidence of drug abuse. And I would submit that the fact he has some sort of prescription medication, without knowing about it being a particularly dangerous type of prescription medication like OxyContin or something, which there's no indication it is, that's not enough. But isn't there a problem getting into that if there was no objection beforehand? Because you go into court, then you don't know there's a problem. You don't have witnesses available. Yeah. Two things, Your Honor. First of all, there's nothing, for a supervised release revocation, there's no procedural requirement of a written objection before the court appearance. Second of all, the objection was made here, at the very least, if the probation officer knew he was taking medication, the probation officer knew what it was, and the probation officer could have said it's OxyContin, if that's what it is, and that concerns me. Or he might have said something like it's cholesterol medication, at which point the Because as I understand cholesterol medication, there's no risk of abuse from that. And then if there really was some question about whether that was an abuse-prone type of medication, then the judge could put it off and come back. But there was an objection here, and there's no procedural, unlike the original sentencing context where there's a Rule 32 for procedural objections with timeframes and so on, there's not in this context. So the objection at the time was enough. Okay. Thank you, Mr. Gunn. Thank you, both counsel. The matter is submitted at this time.
judges: Murphy, Paez, Rawlinson